ANDREW J. NELSON
Assistant Federal Defender
Federal Defenders of Montana
Missoula Branch Office
125 Bank Street, Suite 710
Missoula, MT 59802
Phone: (406) 721-6749
Fax: (406) 721-7751
Email: andy_nelson@fd.org

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE ROBERT WICK,<br><br>Defendant. | **CR 15-30-M-DLC**<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS ALL COUNTS PURSUANT TO FIFTH AMENDMENT** |

Kyle Robert Wick has been charged by indictment with three counts of transfer, possession, and manufacture or dealing of firearms not registered in the National Firearms Registration & Transfer Record, in violation of 26 U.S.C. §§ 5861(a), (d), and (e) (Counts I, II, and IV); one count of possession and transfer of a machinegun in violation of 18 U.S.C. § 922(o) (Count III); and one count of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) (Count V).

Counts II and III each allege specific instances of unlawful conduct. Count II references 10 "exhibits" that the government contends represent examples of "unregistered firearms." Count III references nine exhibits – the same as those alleged in Count II with the exception of exhibit 1, upon which Count I is based – that the government offers as examples of "machineguns."

This summary description of the indictment is muddled and self-referential. That is because the indictment as alleged contains a mishmash of multiple verbs, duplicitous and multiplicitous charges, and lesser-included offenses that invoke overlapping statutory and regulatory schemes. The instant motion focuses on the overriding and fatal constitutional deficiency attending the indictment: the statutory phrase that underpins each of the five counts alleged is void for vagueness in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## ARGUMENT

Criminal liability with regard to each of the five counts alleged in the indictment turns on a single definitional phrase – "readily restored." As part of the Gun Control Act of 1968, 18 U.S.C. §§ 921-30, Congress provided a statutory definition of "firearm":

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or *receiver* of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). (italics added).

Title 26 of the Internal Revenue Code, Subtitle E, Chapter 53 is commonly known as the National Firearms Act (NFA). 26 U.S.C. §§ 5801-72, regulates "Machine Guns, Destructive Devices, and Certain Other Firearms." The NFA defines machinegun as follows:

> (b) Machinegun. – The term "machinegun" means any weapon which shoots, or is designed to shoot, or can be *readily restored* to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or *receiver* of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). (italics added).

The indictment references both "Uzi parts kit[s]" and "Uzi-type receiver sections and parts." *See* Count I; Count II 1- 10; and Count III 1-9. Each count is predicated on the notion, and requires proof as an element of the offense, that the item or set of items meets the statutory definition of machinegun set forth above. If something is a machinegun then in turn it is a firearm, which is particularly relevant to Counts IV and V. There is no allegation that defendant either possessed or transferred fully functional machine guns capable of shooting automatically with a

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

single action of the trigger.[1]

A machinegun receiver standing alone is the legal equivalent of a fully assembled machinegun. 26 U.S.C. § 5845(b). Parts of a receiver constitute a full receiver when they can be "readily restored" to a full receiver. Thus, assigning liability as alleged will require determination of whether the Uzi receiver sections and parts could be "readily restored" to create a full receiver. That determination is and will be the central issue in this case.

**Void for Vagueness**

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." The government violates this guarantee by taking away someone's life, liberty or property under a criminal law so vague that it fails to give ordinary people fair notice fo the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983). The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). These principles apply to statutes defining elements of crimes as well as statutes fixing sentences. *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

[1] The lone exception is exhibit 44, which is a fully assembled machinegun that the government test fired.

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

Deciding whether the statutory definition of a machinegun covers an alleged crime requires the fixing of an abstraction. Where, as here, that determination involves unassembled components of a supposed machinegun – most notably the receiver – the applicable statutes necessarily require the factfinder to decipher whether the parts can be "readily restored."

The "readily restored" clause contained in the statutory definition of a machinegun is unconstitutionally vague as applied to Mr. Wick. To begin with, the inquiry presents a set of highly circumstantial questions. How does one go about deciding whether receiver parts can be "readily restored" to a fully assembled receiver? Who is doing the restoring? An experienced gunsmith? A trained agent for the Bureau of Alcohol, Tobacco, and Firearms in a fully outfitted gun shop? A rank amateur in the garage of their residence? The statute creates a capricious standard that depends on the hypothetical person doing the hypothetical restoring.[2] One is left to imagine the level of skill, time, and materials the statute requires.

At the same time, the statutory definition creates uncertainty as to when the crime would be complete. Justice Holmes described due process as requiring "fair warning ... in language that the common world will understand, of what the law

[2] Caselaw provides limited guidance across a broad spectrum of factual scenarios. *See*, *e.g.*, *United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 421-22 (6th Cir. 2006) (discussing phrase "readily restored" and factors considered by courts in several jurisdictions). That guidance is only pertinent here if one assumes that ordinary people read and meaningfully interpret the decisions of federal appeals courts.

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27(1931). At what point in the restoration process would the Uzi receiver parts cross an unfixed and indefinite line and subject the restorer to criminal sanction? How long is "readily" restored? Fair notice is not provided. An individual citizen cannot decipher what conduct is and what conduct is not proscribed by the statute.

Equally problematic is the potential for arbitrary enforcement engendered by the standardless statutory definition. *See Kolender*, 461 U.S. at 357-358. Is the recipient of the parts kit just as criminally liable for possessing a machinegun as the sender? Mr. Wick has no co-defendants. Evidence at trial will include examples of others who provide similar services that have not been singled out by the ATF and prosecuted as a federal felon.

Even if we assume that an ordinary person would make further inquiry beyond a mere reading of the text of the statute, there is nowhere to find answers. The ATF apparently has standards for properly "demilled" Uzi receivers, standards which have evolved through several iterations. Those standards are not contained in the Code of Federal Regulations. Nor are the ATF's standards assembled and provided to the general public – not on a website, not in a pamphlet or journal, not in any publication.

Regardless, it is well settled that ATF standards lack the force of law. As Justice Kagan wrote in deciding whether a false statement was material to the

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

lawfulness of a firearm sale:

> We think ATF's old position no more relevant that its current one – which is to say, not relevant at all. Whether the Government interprets a criminal statute too broadly (as it sometimes does) or too narrowly (as the ATF used to in construing § 922(a)(6)), a court has an obligation to correct its error. Here, nothing suggests that Congress – the entity whose voice does matter – limited its prohibition of a straw purchaser's misrepresentation in the way [petitioner] proposes.

*Abramski v. United States* 134 S.Ct. 2259, 2274 (2014). *See also United States v. Apel*, 134 S.Ct. 1144, 1151 (2014) ("[W]e have never held that the Government's reading of a criminal statute is entitled to any deference").

Finally, we add the Rule of Lenity to the mix. "As a sort of 'junior version of the vagueness doctrine,' the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal citations omitted). For all the reasons discussed above, the statutory definition of machinegun – the axis upon which all five counts turn – is unconstitutionally vague. The Rule of Lenity instructs that any ambiguities be resolved in Mr. Wick's favor.

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

## CONCLUSION

This Court should dismiss the indictment because the key statutory phrase is unconstitutionally vague as applied to defendant.

DATED this 22nd day of February, 2016.

KYLE ROBERT WICK

By: */s/Andrew Nelson*
ANDREW J. NELSON
Federal Defenders of Montana
Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief in Support of Motion to Dismiss is in compliance. The brief's line spacing is double spaced, and is proportionately spaced, with a 14 point font size and contains less than 6,500 words. (Total number of words: 1,588 excluding tables and certificates).

Dated this 22nd day of February, 2016.

KYLE ROBERT WICK

By: */s/Andrew Nelson*
ANDREW J. NELSON
Federal Defenders of Montana
Counsel for Defendant

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2016, a copy of the foregoing was served on the following persons by the following means:

1, 2 CM-ECF

____ Hand Delivery

3 Mail

____ Overnight Delivery Service

____ Fax

___ E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. PAULETTE L. STEWART
   Assistant United States Attorney
   Counsel for the United States of America

3. KYLE ROBERT WICK
   Defendant

By: */s/ Andrew J. Nelson*
ANDREW J. NELSON
Federal Defenders of Montana
Counsel for Defendant